1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

5
6

NEW WORLD MEDICAL INC. et al.,

7

Plaintiff,

8

v.

9

MICROSURGICAL TECHNOLOGY INC.,

10

Defendant.

CASE NO.  2:20-cv-01621-RAJ-BAT

**REPORT AND
RECOMMENDATION**

11
12

Defendant MicroSurgical Technology, Inc. ("MST") requests a stay of this case pending

13

resolution of its petition to the Patent Trial and Appeal Board ("PTAB") for post-grant review

14

("PGR"). MST alleges that each of the asserted claims of U.S. Patent No. 10,786,391 ("the '391

15

Patent"), the sole patent at issue in this case, are invalid. Plaintiff New World Medical Inc.

16

("NWM") and The Regents of the University of Colorado ("Regents") (collectively, "Plaintiffs")

17

object to the motion to stay as premature and speculative. Dkt. 39.

18

Having considered the parties' submissions, the relevant portions of the record, and the

19

applicable law, the undersigned recommends that the motion be granted.

20

BACKGROUND

21

On November 4, 2020, Plaintiffs filed their Complaint alleging that MST infringes at

22

least Claims 1 and 13 of the '391 Patent. Dkt. 1 ¶ 42. On November 20, 2020, the Court issued

23

Rule 26(f) deadlines. Dkt. 14.

REPORT AND RECOMMENDATION - 1

On December 17, 2020, MST filed its petition for PGR with the PTAB, alleging that each of the claims of the '391 Patent are invalid. Dkt. 30, p. 2.[1] On December 28, 2020, MST filed its Answer and Counterclaims in this case. Dkt. 26.

On January 12, 2021, the parties conferred regarding a stay pending the PGR proceeding. Dkt. 39, p. 2. Plaintiffs agreed to stipulate to a stay if MST agreed to stay its case against New World in the District of Delaware pending resolution of various *inter partes* review ("IPR") proceedings filed by New World. *See MicroSurgical Technology, Inc. et al. v. New World Medical, Inc*., No. 20-754-MN (D. Del.) ("the Delaware case"). *Id.* MST did not agree to Plaintiffs' proposal.

On January 14, 2021, MST simultaneously filed motions to stay pending the PGR (Dkt. 30) and for relief from the initial case deadlines. Dkt. 32. Plaintiffs opposed the motions. Dkt. 35, 39. On February 3, 2021, the Court vacated the initial case deadlines pending a decision on this motion. Dkt. 43.

The parties disagree as to the deadlines in the PGR proceeding. *Cf*. Dkt. 30, p. 2 and Dkt. 39, p. 3. The major difference between the parties' calculations is when the PTAB's institution decision can be expected – either three months (based on MST's calculations) or four months (based on Plaintiffs' calculations) from the filing of the PGR petition (May 17, 2021 or June 22, 2021). If instituted, the PTAB may issue a final written decision within one year of the date of institution (*see* 35 U.S.C. § 326(a); 37 CFR § 42.200), which deadline can be extended by six months. Therefore, if the PGR is granted, a final decision on the merits can be expected by May

---

[1] The Leahy-Smith America Invents Act of 2012 ("AIA") created *inter partes* reviews ("IPR") and PGRs to expedite and streamline litigation and the patent challenge process and to serve as a "quick and cost effective alternative[] to litigation." *Wi-Fi One, LLC v. Broadcom Corp*., 878 F.3d 1364, 1368 (Fed. Cir. 2018).

17, 2022 (based on MST's calculations), or late June 2022 (or if extended, in December 2022) (based on Plaintiffs' calculations).

DISCUSSION

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (internal citation omitted). Courts in the Ninth Circuit "often grant stays pending [the] IPR process in light of the 'liberal policy in favor of granting motions to stay proceedings pending the outcome of [PTO] reexamination or reissuance proceedings.'" *Supercell Oy v. Rothschild Digital Media Innovations, LLC*, No. C15-1119JLR, 2016 WL 9226493, at *2-3 (W.D. Wash. July 28, 2016) (and cases cited therein). On the other hand, "a court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations." *See*, *e.g.*, *Tokuyama Corp. v. Vision Dynamics, LLC*, C082781SBA, 2008 WL 4532565, at *1 (N.D. Cal. Oct. 9, 2008).

In deciding whether to stay litigation pending [PGR] proceedings, courts examine "(1) the stage of the case; (2) whether a stay will simplify the court proceedings; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Roche Molecular Sys., Inc. v. Cepheid*, No. C-14-3228-EDL, 2015 WL 124523, at *3 (N.D. Cal. Jan. 7, 2015); *Pac. Bioscience Labs., Inc. v. Pretika Corp.*, 760 F. Supp. 2d 1061, 1063 (W.D. Wash. 2011).

A.    Stage of the Case

This case is in its infancy. Plaintiffs filed the Complaint three months ago and MST's Answer and Counterclaims were filed less than two months ago. The parties have not engaged in

a Rule 26(f) discovery conference or exchanged initial disclosures.[2] No written or other discovery has taken place. The Court has not issued a scheduling order or set any dates for claim construction or trial.

This Court has granted stays in cases pending institution of an AIA review where the cases were more advanced. *See Nat'l Prods., Inc*., No. C15-1984JLR, Dkt. No. 66 at 9-11 (Malkin Decl., Ex. A) (granting stay when motion to stay was filed prior to any institution decision and after case was pending for approximately eight months); *SRC Labs v. Microsoft Corp.*, 2018 WL 6065635 (W.D. Wash. Nov. 20, 2018), at *1 (granting stay when motion to stay was filed prior to any institution decision and after case was pending approximately one year). Similarly, prior to institution of the AIA, this Court has granted stays pending ex-parte reexamination. *Pac. Bioscience,* 760 F. Supp. 2d at 1063 (granting stay where the parties had undertaken "limited written discovery and document production," had taken no depositions, and had not begun *Markman* briefing).

Given the early stage of these proceedings and minimal resources expended in litigating this action to date, entering a stay will preserve the resources that would otherwise be required to litigate this case at a time when the merits of doing so are uncertain. In addition, the strict statutory deadlines imposed on PGR proceedings ensures that the length of any stay is predictable and minimal. Therefore, the undersigned concludes that the early stage of this case weighs heavily in favor of granting a stay to conserve resources and to avoid the risk of wasted effort and inconsistent determinations.

---

[2] Although on January 13, 2021, Plaintiffs began this process by sending to MST a draft joint status report and discovery plan. Dkt. 35, p. 2.

REPORT AND RECOMMENDATION - 4

1

2      B.    Simplification of Court Proceedings

3             In determining the weight of this factor, courts consider whether and to what extent

4      staying this case pending the outcome of the PGR proceeding would simplify the issues and trial

5      in this case. *SRC Labs,* 2018 WL 6065635, *2 (citing *Pac. Bioscience*, 760 F.Supp.2d at 1063).

6      The emphasis here is whether the PGR proceeding has the potential to simplify the issues in the

7      case – not whether it will resolve all issues. *See Pac. Bioscience Labs*., 760 F. Supp. 2d at 1064

8      & n.2; *see also PersonalWeb Techs., LLC v. Apple, Inc*., 69 F. Supp. 3d 1022, 1028 (N.D. Cal.

9      2014) (finding simplification where only 15 of the 34 claims were directly subject to IPR).

10            Plaintiffs argue that MST's motion is premature because the PTAB has not yet instituted

11     the PGR. Certainly, the case for a stay is stronger after post-grant review has been instituted

12     because there is always a chance that institution will not occur. However, as one court explained,

13     pre-institution stays are "not uncommon" and because either party may file a motion to lift the

14     stay if any part of the PGR petition is denied by the PTAB, "any concern that the motion [ ][is]

15     premature is alleviated by the short time frame of the initial stay and the Court's willingness to

16     reevaluate the stay if *inter partes* review is not instituted for all of the asserted claims." *DSS*

17     *Tech. Mgmt., Inc. v. Apple, Inc*., No. 14-CV-05330-HSG, 2015 WL 1967878, at *3 (N.D. Cal.

18     May 1, 2015) (quoting *Evolutionary Intelligence, LLC v. Facebook, Inc.*, No. C 13-4202 SI,

19     2014 WL 261837, at *3 (N.D. Cal. Jan. 23, 2014)). Moreover, courts apply the three-factor

20     "framework from *Pacific Biosciences* regardless of whether an IPR petition is pending or has

21     been granted." *See Nat'l Prods., Inc. v. Akron Res., Inc*., No. 15-1984JLR (W.D. Wash.), Dkt. #

22     66 at 6 (citations omitted).

23

MST contends that if the claims of the '391 are invalidated by the PTAB, all of the issues in Plaintiffs' Complaint will be resolved, thereby eliminating the need for expert reports or a trial on invalid claims. Even if not all claims are invalidated, positions taken by a patent owner during an AIA proceeding, including the pending PGR, become part of the patent's prosecution history, and can therefore, inform and materially affect the claim interpretations. *Aylus Networks, Inc. v. Apple Inc*., 856 F.3d 1353, 1361 (Fed. Cir. 2017). Thus, regardless of the outcome, MST contends that the issues in this case will be simplified by allowing the PGR proceeding to unfold. *See Nat'l Prods., Inc.*, No. C15-1984 JLR, Dkt. 66 (The same analysis of potential simplification applies even when the PTAB has yet to determine whether to institute the PGR.).

MST further argues that the court need not wait until the PTAB issues its decision on institution of the PGR because statistics indicate that the PTAB has instituted more than 50% of such petitions as of 2020 and once instituted, petitioners have succeeded, at least in part, to invalidate the challenged claims in a majority (59%) of cases from 2012 to 2019; and, in only 12% of the instituted PGRs have all of the challenged claims survived. Dkt. 30, pp. 6-7 (citing Mark J. Feldstein *et al*., Where Are All the PGRs?, at Fig. 4, Fig. 8, Dec. 6, 2019 (accessible at https://www.finnegan.com/en/insights/blogs/ america-invents-act/where-are-all-the-pgrs.html) (last accessed February 16, 2021.[3]

Relying on the same statistics cited by MST, Plaintiffs point out that even in instituted PGRs, all or some claims survive in 32% of cases and there is only a 40% chance that MST's PGR petition will result in the invalidation of all claims in the '391 patent (0.59 (chance of institution) x 0.68 (chance review will be favorable to MST). Dkt. 39, pp. 6-7.

---

[3] Last visited by the court on February 16, 2021.

REPORT AND RECOMMENDATION - 6

1    This court has relied on USPO statistics to assist in determining if a pre-institution IPR

2    will simplify litigation. In *National Products*, the court granted a stay after addressing similar

3    institution and invalidation statistics (a 63% chance the PTAB would institute an IPR; for

4    instituted claims reaching a final decision, a 70% chance all claims would be deemed

5    unpatentable; a 15% chance some claims would be deemed unpatentable, and a 15% chance no

6    claims would be deemed unpatentable). *See Nat'l Prods.*, No. 15-1984JLR, Dkt. 66 at 7–9. The

7    corresponding statistics for PGRs are 59% (claim is instituted), 68% (all claims deemed

8    unpatentable), 20% (some claims deemed unpatentable), and 12% (no claims deemed

9    unpatentable). Dkt. 30 at 6–7.

10    Plaintiffs argue that MST's statistics do not account for other possible outcomes of PTAB

11    proceedings, such as settlement and dismissal. Dkt. 39, p. 7. However, as pointed out by MST,

12    the statistics cover the frequency with which claims are invalidated in final written decisions

13    (Dkt. 41, p. 4 (citing Feldstein, supra, Fig. 4)) and presumably, settlement of the PGR would

14    simplify or moot this action. Plaintiffs also argue that invalidation of Claims 1 and 13 would not

15    moot the case (Dkt. 39, p. 7), but Plaintiffs' Complaint only alleges infringement of those claims.

16    *See* Dkt. 1 ¶ 42. Additionally, Plaintiffs argue that because MST has asserted defenses and

17    counterclaims, the PGR could not dispose of this case. Dkt. 39, p. 6. However, if the '391 Patent

18    is invalidated, there will be no need to examine additional defenses and counterclaims.

19    In less than approximately four to five months, it will be known if the PTAB has

20    instituted the PGR – something that occurs approximately 59% of the time. This minimal delay

21    "mitigates the court's concern" that the stay might not simplify the case. *See Nat'l Prods.*, Dkt.

22    31-1 at 9. When this minimal delay is coupled with a 68% chance that PTAB review will

23

1  simplify the complex issues in this case, this factor weighs in favor of judicial efficiency and a

2  stay.

3  C.    <u>Prejudice to the Non-Moving Party</u>

4        The final factor in the court's analysis is undue prejudice to Plaintiffs. *See Pac.*

5  *Bioscience*, 760 F. Supp. 2d at 1063. While a stay may ultimately result in a delay in resolving an

6  action, this Court has "found that mere delay does not demonstrate undue prejudice." *Implicit*

7  *Networks, Inc. v. Advanced Micro Devices, Inc*., No. C08-0184JLR, 2009 WL 357902, at *3

8  (W.D. Wash. Feb. 9, 2009).

9        Plaintiffs argue that they will be prejudiced because they are direct competitors with

10  MST and because MST refused Plaintiffs' offer to stay this case if MST agreed to stay its

11  Delaware case against New World pending decisions on New World's similar patent office

12  proceedings. Dkt. 39, pp. 9-10.

13       Competition between parties can weigh in favor of finding undue prejudice.

14  *VirtualAgility Inc. v. Salesforce.com, Inc.,* 759 F.3d 1307, 1318 (Fed. Cir. Jul. 10, 2014). A court

15  must determine "whether the patentee will be unduly prejudiced by a stay," which "focuses on

16  the patentee's need for an expeditious resolution of its claim." *Id.* (holding that district court

17  abused its discretion in denying stay); *see also Palomar Techs., Inc. v. Mrsi Sys., LLC*, No. 15-

18  CV-1484 JLS (KSC), 2016 WL 4496839, at *4 (S.D. Cal. June 14, 2016) (granting stay where

19  parties were competitors); *Nat'l Prods*., Dkt. 31-1 at 11–13 (same); *Pac. Bioscience Labs.*, 760

20  F. Supp. 2d at 1067 (same).

21       Here, it is not disputed that New World and MST are direct competitors in the market for

22  ophthalmic surgical devices used for the treatment of glaucoma. *See* Dkt. 39, pp. 9-10. However,

23  Plaintiffs did not submit evidence to substantiate their claim that this direct competition will

result in prejudice such that they require an expeditious resolution of their claims. Plaintiffs have not sought a preliminary injunction and have not suggested that they will be harmed in a way that is not compensable in monetary damages.

Plaintiffs' assertion that they will be prejudiced because MST did not agree to stay the Delaware case is also unavailing. There is nothing to indicate that the Delaware litigation (regardless of how it proceeds) will impact or unduly prejudice Plaintiffs if this case is stayed. MST correctly notes that Plaintiffs' willingness to stay this case in exchange for a stay of the Delaware case belies Plaintiffs' assertion of prejudice. The Delaware litigation is also more advanced than this one (the parties have been engaged in discovery for about five months), Plaintiffs have not filed a motion to stay in that case, and Delaware courts often deny stay requests pre-institution. Dkt. 39, p. 10.

D.    Balancing the Factors

In sum, the factors weigh in favor of a stay. The early stage of this litigation, the likelihood of substantial simplification of this case, and the lack of undue prejudice lead the undersigned to conclude that a stay pending resolution of the PGR petition is appropriate. Accordingly, it is recommended that the Court grant MST's motion to stay (Dkt. 30).

OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **March 8, 2021**. The Clerk should note the matter for **March 10, 2021**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days

after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed five (5) pages. The failure to timely object may affect the right to appeal.

DATED this 18th day of February, 2021.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 10